**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| **Charles E. McInnis,** | ) | **Civil Action No.:_____** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **Experian Information Solutions, Inc.,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1.      This is an action brought by Plaintiff, Charles E. McInnis, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2.      The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.      The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4.      Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5.     To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e(b) and 1681i, which are two of the cornerstone provisions of the FCRA.

6.     One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7.     The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

2

## JURISDICTION AND VENUE

8.     This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331.

9.     Venue is proper in the Florence Division because the Plaintiff resides in Marlboro County, and the Defendant transacted business in this division.

## PARTIES

10.     Plaintiff, Charles E. McInnis, is a resident and citizen of the State of South Carolina, Marlboro County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

11.     Defendant Experian Information Solutions, Inc., ("Experian") is an Ohio company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, C T Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina 29223. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

12.     Defendant Experian is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a.  Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

13.     Defendant disburses such consumer reports to third parties under contract for monetary compensation.

14.     Defendant's acts and omissions alleged herein are in violation of the Fair Credit

Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

15.     The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's Experian credit file; and failed to reinvestigate Plaintiff's disputes. Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

16.     In December 2025, Plaintiff was sued by a collection company for two accounts that did not belong to him.

17.     After being served with the lawsuit, Plaintiff went online to check his credit reports and discovered he had been the victim of identity theft.

18.     On or about December 9, 2025, when Plaintiff attempted to obtain a copy of his Experian credit report, Defendant denied his request.  In reviewing his Equifax and TransUnion credit reports, Plaintiff discovered numerous accounts had been opened in his name without his knowledge.  Additionally, there were addresses, phone numbers, and other personal information reporting that did not belong to him.

19.     On or about December 10, 2025, Plaintiff sent a dispute letter to Defendant stating he had been the victim of identity theft and, upon reviewing his credit reports, discovered multiple accounts that were not his, as well as other information reporting that was

incorrect.  Specifically, Plaintiff disputed American Credit Acceptance, Acct. No. *1001; Cavalry Portfolio Svcs, Acct. No. *8452; LVNV Funding LLC, Acct. No. *4289; Midland Credit Management Inc., Acct. No. *5693; Midland Credit Management Inc., Acct. No. *8936; Portfolio Recovery Assoc, Acct. No. *9706; and Capital One Bank USA NA, Acct. No. *9402, (hereinafter collectively referred to as the "Accounts") as fraudulent. In addition, Plaintiff disputed hard inquires for Capital One, THD/CBNA, and Synchrony Financial.  Plaintiff also disputed six (6) addresses at which he had never lived, and five (5) phone numbers he had never used.  Finally, Plaintiff requested Defendant add a fraud alert to his credit file.  With his letter, Plaintiff provided his full Social Security number, date of birth, and address.

20.     Defendant received Plaintiff's dispute on December 16, 2025.

21.     Thereafter, Defendant sent Plaintiff a postcard stating an Initial Security Alert had been added to his Experian credit file.

22.     On or about December 22, 2025, Defendant sent Plaintiff a letter regarding "Remedying the Effects of Identity Theft."

23.     On or about January 7, 2026, Defendant sent Plaintiff Dispute Results to his December 10, 2025, dispute, wherein Defendant informed Plaintiff the Portfolio Recovery Assoc, American Credit Acceptance, and LVNV Funding LLC, Accounts were deleted from Plaintiff's credit report. Unfortunately, the fraudulent Midland Credit Management Accts. 32804 and 32764 was verified and remained.  Two of the disputed addresses and two disputed phone numbers were also deleted from Plaintiff's credit report, but other inaccurate information remained.

24.     On or about February 4, 2026, Plaintiff sent Defendant a second dispute letter wherein Plaintiff informed Defendant he had received the Dispute Results, but several incorrect items continued to be reported as belonging to him on his credit report.  Plaintiff specifically disputed Midland Credit Management, Acct. Nos. 32764 and 32804 as fraudulent accounts opened in his name without his knowledge or permission.  Plaintiff also disputed the address of 829 Antioch Church Rd, Bennettsville, SC 29512, as an address linked to the fraudulent accounts, the address of 2738 New Covenant Ln, Clio, SC, as a family member's address at which he did not live, and the address Elliott, Bennettsville, SC 29512 as not his address.  Plaintiff disputed a phone number reporting which did not belong to him, but to his estranged wife.  Finally, Plaintiff disputed the name "Sara" reporting in the "Spouse/Co-Applicant" section.  With his letter, Plaintiff provided his full Social Security number, date of birth, and address.

25.     Defendant received Plaintiff's second dispute letter on February 11, 2026.

26.     Defendant did no reinvestigation of Plaintiff's February 4, 2026, dispute.

27.     On or about February 19, 2026, Defendant sent Plaintiff a letter stating that telephone numbers are reported to it by creditors and others.  Defendant informed Plaintiff that if he wanted to update the telephone numbers on his report or block any information that was the result of an alleged identity theft, he would need to provide Defendant a valid identity theft report.

28.     On that same day, Defendant also sent Plaintiff Dispute Results informing Plaintiff that a disputed item was not listed on his credit report and that "address(s) disputed are not currently displaying on your personal credit report."  Defendant specifically informed

6

Plaintiff that one of the disputed telephone numbers had been deleted before his dispute, and that the Spouse name Sara had also been deleted before his dispute.

29. On or about April 1, 2026, Plaintiff sent Defendant a third dispute letter. In his letter, Plaintiff stated he had received Defendant's Dispute Results. However, several incorrect items were still reporting on his credit report. Specifically, Plaintiff again disputed the address of 829 Antioch Church Rd, Bennettsville, SC 29512, as an address linked to the fraudulent accounts, the address of 2738 New Covenant Ln, Clio, SC, as a family member's address at which he did not live, and the address of Elliott, Bennettsville, SC 29512 as not his address. Plaintiff also disputed numerous inquiries by entities with whom he had not applied for credit and did not have any accounts with: Capital One, First Premier Bank, Merrick Bank, Montgomery Ward, One Main, Portfolio Recovery Assoc., SoFi Ban NA, and Synchrony Financial. With his dispute, Plaintiff provided his full Social Security number, date of birth, and address.

30. Defendant received Plaintiff's third dispute on April 7, 2026.

31. Defendant did no reinvestigation of Plaintiff's April 1, 2026, dispute.

32. On or about April 14, 2026, Defendant sent Plaintiff Dispute Results, wherein Defendant informed Plaintiff that it "stores address information as it is sent to us by your credit grantors or from information contained in public records. One or more sources of information reported the address you questioned and it is part of your credit history." With respect to the inquiries disputed by Plaintiff, Defendant stated "Experian is required by federal law to keep a record of all companies that have requested your credit information and to display the names of the requesting companies to you. Experian generates the

7

information listed in the inquiry section from its own business records, which it has verified as accurate." Defendant went on to state "[i]f you believe certain inquiries on your credit report were generated as a result of identity theft, please contact Experian by phone at 800 583 4080 or in writing at Experian, PO Box 9701, Allen, Texas, 75103." Although Plaintiff had contacted Defendant in writing at the specific address provided and disputed all of the inaccurate inquiries, Defendant refused to remove them from his credit report. Additionally, while Defendant's dispute results indicated the address of Elliott Bennettsville, SC 29512 had been deleted "before his dispute", the other two inaccurate addresses Plaintiff disputed continued to be reported by Defendant as belonging to Plaintiff.

33. Defendant repeatedly failed to make a reasonable reinvestigation into Plaintiff's disputes.

34. Upon receipt of the ACDV responses from the furnishers of the disputed account information, Defendant simply accepted the furnishers' verifications of the accounts and did not undertake to perform any investigation of its own.

35. For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D.

Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

36.    If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

37.    Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

38.    While Defendant has continued to report false, fraudulent, and inaccurate information on Plaintiff's credit reports, those credit reports have been viewed by Capital One, Synchrony Financial, Credit Fresh Marketing, Axcess Financial/CNGO, Cap One Auto, Security Finance Corporation, AF Holdco LLC, TBOM/Vervent-Total Visa, CB Indigo, Warehouse Home Furnishing Distributions, Mission Lane WebBank, Creditwise Capital1 TU-C, Syncb/Syncb, Syncb/Car Care Discount Tire, Portfolio Recovery Associates, Shellpoint Mortgage Svc, Midland Credit Management, Avante USA, Radius Global Solutions, American Coradius Intl, Medical Debt Resolution via ECMedical Debt Resolution, Cavalry Portfolio Service, CPC Credit Vision,, Constar Financial Srvcs, Synergetic Communication Inc, and Lockhart Morris Montgo.

## <u>COUNT ONE</u>
(Fair Credit Reporting Act)

39.    The Plaintiff adopts the averments and allegations of paragraphs 16 through 38 hereinbefore as if fully set forth herein.

40.    Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

41.    Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

42.    As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, lost credit opportunities, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, time spent trying to fix his Experian credit report, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out-of-pocket expenses.

43.    Plaintiff is entitled to actual damages in an amount to be determined by the jury.

44.    In addition, the Plaintiff has incurred litigation expenses and attorney's fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

45.    Plaintiff is entitled to his attorney's fees, pursuant to 15 U.S.C. §1681o(a)(2).

**COUNT TWO**
(Fair Credit Reporting Act)

46.     The Plaintiff adopts the averments and allegations of paragraphs 16 through 45 hereinbefore as if fully set forth herein.

47.     Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to:  (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

48.     Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

49.     Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

50.     As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, lost credit opportunities, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, time spent trying to fix his Experian credit report, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out-of-pocket expenses.

51.     Plaintiff is entitled to actual damages in an amount to be determined by the jury.

52.     In addition, the Plaintiff has incurred litigation expenses, and attorney's' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

11

53.     Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights.  Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

54.     Plaintiff is entitled to his attorney's fees, pursuant to 15 U.S.C. §1681n(a).

### AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.     Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.     Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.     Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.     For this trial to be heard by a jury; and

E.     For such other and further relief as the Court may deem just and proper.

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed.  ID No.  10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel


**<u>DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:</u>**

Experian Information Solutions, Inc.
c/o C T Corporation System
2 Office Park Court, Suite 103
Columbia, South Carolina 29223